1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RODRIGUEZ,<br><br>        Petitioner,<br><br>    v.<br><br>DANIEL PARAMO, Warden at R.J.<br>Donovan Correctional Facility<br><br>        Respondent. | No.  1:15-cv-01896-LJO-SKO HC<br><br><br>**FINDINGS AND RECOMMENDATION<br>THAT THE COURT DENY PETITION<br>FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 1)** |

      Petitioner, Jose Rodriguez, is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Petitioner presents three grounds for habeas relief: (1) insufficient evidence to support his conviction for first degree murder; (2) the trial court improperly instructed the jury on the applicable law; and (3) ineffective assistance of counsel.  Petitioner also requested the Court hold an evidentiary hearing on his claims.  (Doc. 23).  The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief and decline to hold an evidentiary

1

1    hearing on Petitioner's claims.

2    **I.**     <u>**Procedural and Factual Background**</u>[1]

3

4       On May 13, 2010, Petitioner and two men, Michael Torres ("Torres") and Joseph

5 Sanchez ("Sanchez"), drove to a store in McFarland, California to buy beer for a barbecue. All

6 three men were affiliated with the South Side Criminals gang from Delano, California. At the

7 store, Petitioner and Sanchez remained in the car while Torres entered the store to purchase beer.

8 Several people, including Michael Ramirez ("Ramirez"), were in the parking lot of the store when

9 Petitioner, Torres, and Sanchez pulled into the parking lot.

10       After realizing he did not have the ATM card he was going to use to purchase beer, Torres

11 exited the store after approximately a minute. Upon returning to the parking lot, Torres saw

12 Ramirez fighting with Petitioner inside Petitioner's car. Petitioner was sitting in the driver's seat,

13 Ramirez was in the passenger's seat, and Ramirez had his hands wrapped around Petitioner's

14 neck. It was not immediately clear to Torres why Petitioner and Ramirez were fighting or how

15

16 the fight started.[2]

17       In an effort to stop the fight, Torres tried to open the driver's side door of Petitioner's car,

18 but it was locked, so he walked around to open the passenger's side door. Ramirez exited

19 Petitioner's car and asked Torres where he was from.[3] Torres replied that he was from Delano

20 and Petitioner stated that they were South Side Criminals. Ramirez told Torres that he was with

21 the "Myfas"[4] and that Torres should go "back to his side of the bridge."[5] Ramirez then punched

22 Torres in the face.

23

---

[1] The factual and procedural background are taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Rodriguez*, No. F066128, 2014 WL 6491980 (Cal. Ct. App. Nov. 20, 2014), and review of the record.
[2] Based on the trial testimony, it now appears that Ramirez started the fight because Petitioner and Ramirez are affiliated with different gangs and Petitioner is from Delano, while Ramirez is from McFarland.
[3] At trial, Torres testified that when a gang member asks someone where they are from, it is a "gang challenge," and Torres felt threatened by Ramirez's question. (Lodged Doc. 6 at 428.)
[4] The Myfas are a gang located in McFarland, California.
[5] Ramirez appeared to be telling Torres to leave McFarland and go back to Delano.

2

Torres got into the passenger side of Petitioner's car and Petitioner put the car in reverse to leave the store. As Petitioner was backing up, Ramirez kicked the front of Petitioner's car. Petitioner stopped, picked up a gun from under the seat, opened the driver's side door, and stepped out of the car before firing several shots over the roof of the car at Ramirez. Ramirez was wounded in the shooting and a bystander was killed by a gunshot wound to the head. After the shooting, Petitioner drove away from the scene with Torres and Sanchez in the car.

At trial, Petitioner testified that Ramirez got into the passenger side of Petitioner's car and, without saying anything, started beating Petitioner. Petitioner did not know Ramirez prior to this time. After Ramirez exited the car and as Petitioner was backing the car up, Petitioner stated that Torres did told him Ramirez had a gun and Petitioner believed he saw a weapon in Ramirez's hand. Panicking as he saw Ramirez approaching the front of his car, Petitioner got out of the car and started shooting.

Petitioner was charged with (1) first degree murder (Cal. Penal Code § 187(a)); (2) premeditated attempted murder (Cal. Penal Code §§ 664, 187(a), 189); and (3) street terrorism (Cal. Penal Code § 186.22(b)(1)). Count 1 contained an enhancement alleging that the murder was carried out to further the activities of a criminal street gang (Cal. Penal Code §190.2(a)(22)). Counts 1 and 2 contained enhancements alleging premeditation or the discharge of a firearm from a motor vehicle, which caused great bodily injury (Cal. Penal Code § 12022.53(d)), and that the crimes were committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)).

Petitioner's jury trial began on October 1, 2012. At trial, Petitioner's counsel objected to the court instructing the jury pursuant to California Criminal Jury Instruction ("CALCRIM") 521, for drive-by murder.[6] Counsel argued that Petitioner shot the victims while standing *outside* the

_____

[6] As read to the jury, in relevant part, CALCRIM 521 states:

The defendant has been prosecuted for first degree murder under two theories: (1) the murder was

3

vehicle; therefore, his actions did not fall within the language of California Penal Code § 189,[7] which prohibits firing a firearm *from* a motor vehicle. The trial court overruled the objection, finding:

> [t]he [ ] issue was whether or not I should give the shooting from a vehicle instruction as an additional means by which the Prosecution could assert a theory of first-degree murder. And I decided over the defense objection that that did apply to the facts of this case. The shooting did not literally happen with the firearm within the cab of the vehicle, but the evidence was that the vehicle - - that the defendant was in the driver's seat. The vehicle was moving. It had, from the evidence, been backed up, was moving slightly forward. . . . It was stopped. The defendant got out of the driver's side door, left the door open, stood in that space briefly with the vehicle running and fired over the roof of the vehicle, and I felt that that was sufficient - - that the vehicle in those circumstances was a sufficient instrumentality of the overall circumstances that it warranted the People's theory, and that was over the Defense objection.

(Lodged Doc. 8 at 823-24.)

During deliberations, the jury sent two notes to the court. First, the jury asked for clarification or a definition of the phrase "shots from a motor vehicle." (*Id*. at 826.) The court instructed the jury, "I'm simply going to restate to you what I previously stated, and that is that words and phrases not specifically defined in my instructions are to be applied using their

---

willful, deliberate, and premeditated; and (2) the murder was committed by shooting a firearm from a motor vehicle. . . .

The defendant is guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if:

1. He shot a firearm from a motor vehicle;
2. He intentionally shot at a person who was outside the vehicle; AND
3. He intended to kill that person.

A firearm is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of any explosion or other form of combustion.

A motor vehicle includes a passenger vehicle.

(Lodged Doc. 3 at 557-58.)

[7] Under California law, homicide is defined, in part as "any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Cal. Penal Code §189.

4

ordinary, everyday meanings."[8]  *Id.*

Second, the jury indicated that they did not find instructions for second degree murder in the jury instructions they were given, and asked whether "we consider second-degree murder as a lesser crime?"  *Id*. at 825-26.  Outside the presence of the jury, the trial court informed counsel,

> after some investigation by the Court and by counsel, we are surprised to see that the jury is actually correct in the way that the CALCRIM - - as we now see the way the CALCRIM instructions are formulated.  It's perhaps a deficiency in those instructions that needs to be taken up by the instruction committee for CALCRIM.  Nevertheless, that is addressed in CALJIC 8.12.[9]  I plan to advise the jury that I have instructed them on the elements of murder.  I have instructed them on the elements applicable in this case to the Prosecution's theory of first-degree murder.  And then I plan to tell them that murder which is not of the first degree is murder of the second degree.[10]

*Id.*

After this conference with counsel, the trial court responded to the jury's question by informing the jury that

> I have instructed you on the elements of murder, and I have instructed you on the elements of the theories of first-degree murder that the Prosecution brings in this case.  Now I will tell you that murder which is not of the first degree is murder of the second degree.

*Id*. at 826-27.

On October 5, 2012, the jury found Petitioner guilty of (1) first degree murder (Cal. Penal Code § 187(a)); and (2) premeditated attempted murder (Cal. Penal Code §§ 664, 187(a), 189).

---

[8] Outside the presence of the jury and in discussion with the attorneys, the trial court explained,

> I don't intend to get into any further definition of the word 'from' for the jury.  The word "from" is essentially the basis of the issue that was raised in the instruction conference, which we've placed on the record.  The word "from" is a functional word that means a starting place or the source of, and we're - - I'm - - it has a common meaning, and the jury can just apply that common meaning to the facts as they find them."

(Lodged Doc. 8 at 825.)

[9] California Jury Instruction 8.12 Murder – Killer Other Than Perpetrator of Underlying Crime – Provocative Act Doctrine, states in part, "[m]urder which is not of the first degree is murder of the second degree."  CALJIC 8.12.

[10] The California penal code defines first degree murder, then states that "[a]ll other kinds of murders are of the second degree."  (Cal. Penal Code § 189).

The jury also found to be true the enhancements to Counts 1 and 2 alleging premeditation or the discharge of a firearm from a motor vehicle, causing great bodily injury (Cal. Penal Code § 12022.53(d)). The jury did not find the enhancement to Count 1, alleging that the murder was carried out to further the activities of a criminal street gang (Cal. Penal Code §190.2(a)(22)), to be true, nor that Counts 1 and 2 were committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)). Finally, the jury found Petitioner not guilty of street terrorism (Cal. Penal Code § 186.22(b)(1)).

On November 5, 2012, the court sentenced Petitioner to a total prison term of 82 years to life. For Count 1, Petitioner was sentenced to 25 years to life for first degree murder plus an additional 25 years to life for the gun allegation. For Count 2, premeditated, attempted murder, Petitioner was sentenced to a consecutive 7 year to life sentence plus a consecutive 25 years to life for the gun allegation.

On June 28, 2013, Petitioner filed an appeal with the California Court of Appeal, Fifth Appellate District. On November 20, 2014, the Court of Appeal denied Petitioner's appeal.[11] On December 23, 2014, Petitioner filed a Petition for Review with the California Supreme Court, which was summarily denied on January 28, 2015.

On December 21, 2015, Petitioner filed his petition for writ of habeas corpus before this Court. Respondent filed a response on March 16, 2016, and Petitioner filed a reply on May 13, 2016, after the Court granted him an extension of time.

**II.** **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996,

---

[11] The relevant sections of the Court of Appeal decision are discussed *infra*.

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court

must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

Petitioner raised each of his three claims on appeal before the California Supreme Court. Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991). The last reasoned opinion for each of these issues was that of the Court of Appeal.

**III.    The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claim.**

In his first ground for habeas relief, Petitioner alleges that the evidence adduced at trial was insufficient to convict him of first degree murder and attempted murder for firing a gun from a motor vehicle. (Doc. 1 at 6.) Specifically, Petitioner contends that the evidence shows he was not inside his car when he fired his gun; therefore, his conviction for first degree murder by firing from a vehicle is unconstitutional. *Id*. Respondent counters that the question of whether firing a gun while not entirely within a vehicle satisfies the state-law definition for murder is a question of state law, not for the federal court to decide. (Doc. 15 at 12.)

## A. Standard of Review for Insufficient Evidence Claims

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Virginia*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Virginia*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

## B. State Court of Appeal Opinion

The Court of Appeal held that

> [Petitioner] does not challenge the sufficiency of the evidence supporting his conviction under a theory of deliberation and premeditation. Instead, [Petitioner] argues that the record affirmatively shows that the jury's verdict rested on the theory that [Petitioner] fired from a motor vehicle, and that theory was not supported by the evidence.
>
> According to [Petitioner's] argument, the jury's questions concerning the definition of "from [a] motor vehicle" and the nature of second degree murder are affirmative proof that the jury relied solely upon the motor vehicle basis when convicting [Petitioner]. This conclusion, however, gives undue weight to the jury's questions that they had rejected a theory of deliberation and premeditation. Indeed, the jury may have simply been looking for clarification on the simpler theory so as to avoid having to discuss the issues of deliberation and premeditation. After receiving clarification, the jury may have opted to reject the motor vehicle theory and continued onto the theory of deliberation and premeditation, before ultimately deciding to convict. Accordingly, [Petitioner] has not made an affirmative showing that the jury's guilty verdict was not based on a theory of deliberation and premeditation, and is not entitled to reversal.
>
> Further, we are not persuaded that the motor vehicle theory of the crime was unsupported by the evidence. A review of the surveillance footage shows [Petitioner] firing a weapon over the hood of a running car with the door open and only one foot outside the car. Moreover, the victim was outside the car, and [Petitioner] admitted to firing the gun intentionally at Ramirez. Viewing this

9

evidence in the light most favorable to the conviction, we find there was substantial evidence to support [Petitioner's] conviction for first degree murder.

*People v. Rodriguez*, No. F066128, 2014 WL 6491980 (Cal. Ct. App. Nov. 20, 2014), at 4-5.

### C. **Denial of Petitioner's Insufficient Evidence Claim Was Not Objectively Unreasonable.**

Petitioner argues that the evidence presented at trial was insufficient to prove that he fired his gun "from" a motor vehicle or that the murder was premeditated and deliberate. (Doc. 1 at 22.) Petitioner contends that the verdict was "prejudicial because the jury was allowed to find [P]etitioner guilty of [f]irst [d]egree murder even if [the] [j]urors disagreed on whether premeditation and deliberation or drive-by murder supported the charge." *Id*.

In evaluating the sufficiency of the evidence, the reviewing court must consider all evidence adduced at trial. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010). The "critical inquiry on review" of an insufficiency of evidence claim "must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Virginia*, 443 U.S. at 318.

Here, the prosecutor called two witnesses to testify who were at the scene of the shooting. The first witness, Rita Garcia ("Ms. Garcia"), testified that on May 13, 2010, she was with Ramirez at a store in McFarland, California. (Lodged Doc. 6 at 321-22.) Ms. Garcia testified that while sitting in the back seat of Ramirez's car in the parking lot of the store, she saw Petitioner's car pull up. *Id*. After one of the passengers, Torres, exited Petitioner's car, Ramirez got into the passenger's seat of Petitioner's car and began fighting with Petitioner. *Id*. at 324. Ms. Garcia did not know why Ramirez got into Petitioner's car nor why he was fighting with Petitioner. *Id*. After Ramirez exited Petitioner's car and punched Torres, Ms. Garcia saw Petitioner's car back up and Ramirez kick one of the front tires. *Id*. Petitioner stopped the car, and Ms. Garcia stated that Petitioner was halfway in his car and halfway outside his car when he pulled out a gun and

shot Ramirez.[12] *Id.* at 325, 334.

One of Petitioner's passengers, Torres, also testified for the prosecution. Torres stated that when he was walking back from the store to the car, he saw petitioner and Ramirez in the car fighting. *Id.* at 376. When Ramirez got out of the car, he asked Torres where Torres was from and then punched Torres. *Id.* at 376-77. After Torres got into Petitioner's car and Petitioner began to back up, Ramirez kicked the car. *Id.* at 378. Torres stated that Petitioner stopped the car, got out, and "started shooting." *Id.* at 378-79. According to Torres, Petitioner was standing outside the car with the car still running when he fired the gun. *Id.* at 436. Torres believed that Petitioner pulled the gun out from under the driver's side seat. *Id.* at 384.

Petitioner testified in his own defense at trial. He stated that after Torres left the car, Ramirez got into the front passenger's seat and began punching Petitioner. (Lodged Doc. 7 at 601.) Petitioner did not know Ramirez and had never spoken to him. *Id.* at 602. After Torres got back into the car, Petitioner claims Torres told him "them fools [referring to Ramirez] had a gun." *Id.* at 606. As Petitioner tried to back out of the parking lot, he saw Ramirez walking towards the car and believed that Ramirez had something in his hand, possibly a weapon. *Id.* at 621. Petitioner stated, "I seen the guy [Ramirez] coming towards us, and I just – I panicked, and I just – I got off the car, and I started shooting." *Id.* at 607. Before getting out of the car, Petitioner had to shift the car's gears from reverse to neutral. *Id.* at 625. Petitioner admitted that he grabbed the gun from under his seat and shot at Ramirez because he was scared for his life. *Id.* at 609.

The Court must examine the evidence in the light most favorable to the prosecution, and assume that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Virginia*, 443 U.S. at 319; *Jones*, 114 F.3d at 1008.

---

[12] Ms. Garcia first testified that the shots were fired from the passenger's side of Petitioner's car, but after watching a video of the events stated that the shots were fired from the driver's side.

Petition was charged with first degree murder under two theories: (1) the murder was willful, deliberate, and premeditated; and (2) the murder was committed by shooting a firearm from a motor vehicle. As to the first theory, the jury was instructed that:

> The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice, and knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused death.

> The length of time a person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

(Lodged Doc. 3 at 557) (*citing* CALCRIM 521).

Here, two eyewitnesses testified that after Ramirez kicked Petitioner's car, Petitioner stopped the car as he was going in reverse, picked up a gun, and shot at Ramirez. Petitioner testified that he shifted the gears of the car from reverse to neutral, reached under his seat, picked up his gun, got out of the car, and fired at Ramirez. Therefore, it is reasonable that the jury could have concluded that Petitioner acted willfully, in that he intended to kill Ramirez; deliberately, in that he weighed whether to continue backing the car up or stopping the car and shooting at Ramirez with the knowledge of the consequences of shooting at someone; and with premeditation, in that he decided to kill Ramirez before shooting him.

Petitioner argues that the jurors found him guilty even "if" they "disagreed on whether premeditation and deliberation" supported the charge. However, there is nothing in the record to suggest that the jurors did not agree that Petitioner acted with deliberation and premeditation. Indeed, the Court polled the jurors to ensure a unanimous verdict and each juror stated that the guilty verdict was their verdict. (Lodged Doc. 8 at 844-45.)

Based on the jurors' question on the charge of shooting a firearm from a motor vehicle, Petitioner also argues that the Court "failed to clear up any [i]nstructional confusion [e]xpressed by the [j]ury or help the [j]ury understand the legal principles." (Doc. 1 at 22.) The jury instruction provided to the jury regarding committing a murder by shooting a firearm from a motor vehicle, stated that the prosecutor must prove Petitioner (1) shot a firearm from a motor vehicle; (2) intentionally shot a person who was outside the vehicle; and (3) intended to kill that person. (Lodged Doc. 3 at 557) (*citing* CALCRIM 521).

During deliberations, the jury sent a question to the court asking for clarification or a definition of the phrase "shots from a motor vehicle." (Lodged Doc. 8 at 826.) Before speaking with the jury, the court spoke with the attorneys and stated:

> I don't intend to get into any further definition of the word 'from' for the jury. . . . The word 'from' is a functional word that means a starting place or the source of, . . . it has a common meaning, and the jury can just apply that common meaning to the facts as they find them."

*Id*. The court instructed the jury, "I'm simply going to restate to you what I previously stated, and that is that words and phrases not specifically defined in my instructions are to be applied using their ordinary, everyday meanings." *Id*.

Petitioner theorizes that the jury did not understand the phrase "shots from a motor vehicle" after the court explained that undefined words "are to be applied using their ordinary, everyday meanings." *Id*. However, there is no indication from the record that the jury did not understand the court's answer to their question. Nor is there any evidence that the jury was unable to weigh the evidence, resolve conflicting evidence, and draw reasonable inferences from the facts. Further, given the fact that Petitioner was charged with first degree murder under two theories, the Court cannot say that the jury focused on one theory of murder over the other theory in determining Petitioner's guilt.

As the Court noted, the "critical inquiry" on an insufficiency of evidence claim is not "simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Virginia*, 443 U.S. at 318. Here, viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of" committing murder by shooting from a motor vehicle beyond a reasonable doubt. *Id*. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).

Petitioner admitted to stopping his car, getting out while it was still running, and shooting over the car at Ramirez; thus, a reasonable jury could have found that Petitioner met the elements of (1) shooting a firearm from a motor vehicle; (2) intentionally shooting Ramirez, who was standing outside the vehicle; and (3) intending to kill Ramirez. Consequently, the Court recommends denying Petitioner's claim that insufficient evidence was adduced at trial to support his conviction for murder.

IV. **The State Court Did Not Err in Instructing the Jury on the Definition of Second Degree Murder.**

In his second ground for habeas relief, Petitioner argues that the trial court failed to properly instruct the jury with regard to the difference between first degree murder and second degree murder. (Doc. 1 at 23-24.) Respondent counters that the question of whether there was an instructional error with the second degree murder jury instruction, is a matter of state, not federal law. (Doc. 15 at 14.) Therefore, this Court cannot address this claim through a habeas petition. *Id*.

A. **The Second Degree Murder Instruction Given to the Jury**

The trial court gave the jury the CALCRIM 521 instruction for murder. The instruction describes the requirements for the two theories of murder for which Petitioner was charged: (1) willful, deliberate, and premeditated murder; and (2) murder that was committed by shooting a

14

firearm from a motor vehicle.[13]  As read to the jury, the instruction also states "[t]he People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder."  (Lodged Doc. 3 at 558.)

This language tracks the standard jury instruction form, with the exception of the last portion of the sentence.  The final sentence of the standard jury instruction reads: "If the People have not met this burden, you must find the defendant not guilty of first degree murder *and the murder is second degree murder*."  CALCRIM 521 (emphasis added to identify omitted portion

---

[13] As read to the jury, CALCRIM 521 reads:

The defendant has been prosecuted for first degree murder under two theories: (1) the murder was willful, deliberate, and premeditated; and (2) the murder was committed by shooting a firearm from a motor vehicle.

Each theory of first degree murder has different requirements, and I will instruct you on both.

You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder.  But all of you do not need to agree on the same theory.

The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences decided to kill.  The defendant acted with premeditation if he decided to kill before completing the acts that caused death.

The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary person to person and according to the circumstances.  A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.

The defendant is guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle.  The defendant committed this kind of murder if:

1.  He shot a firearm from a motor vehicle;
2.  He intentionally shot at a person who was outside the vehicle; AND
3.  He intended to kill that person.

A firearm is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion.

A motor vehicle includes a passenger vehicle.

of the instruction).

During deliberation, the jury sent a note to the court stating that they did not find an instruction for second degree murder in the jury instructions they were given, and asked whether "we consider second-degree murder as a lesser crime?" The trial court responded to the jury's question as follows:

> I have instructed you on the elements of murder, and I have instructed you on the elements of the theories of first-degree murder that the Prosecution brings in this case. Now I will tell you that murder which is not of the first degree is murder of the second degree.

*Id*. at 826-27.

## B. Standard of Review for Jury Instruction Claims

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006). "[A] petitioner may not transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (internal quotation marks omitted).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The petitioner must also prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72. And even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction

16

in isolation but must consider the context of the entire record and of the instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157. "Where the jury verdict is complete, but based upon ambiguous instructions, the federal court, in a habeas petition, will not disturb the verdict unless 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Solis v. Garcia*, 219 F.3d 922, 927 (9th Cir. 2000) (quoting *Estelle*, 502 U.S. at 72).

Even when the trial court has made an error in the instruction, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. A violation of due process occurs only when the instructional error results in the trial being fundamentally unfair. *Estelle*, 502 U.S. at 72-73; *Duckett v. Godinez*, 67 F.3d 734, 746 (9th Cir. 1995). If the court is convinced that the error did not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

### C. <u>State Court of Appeal Opinion</u>

The Court of Appeal found that the trial court properly instructed the jury on first and second degree murder. The Court of appeal held:

> the jury was instructed on the definition of murder and first degree murder, and was instructed that second degree murder is any murder that is not murder in the first degree. On appeal, [Petitioner] does not dispute the accuracy of the instructions concerning murder of the first degree [ ], but asserts that the instructions concerning second degree murder were deficient for failing to state that second degree murder applies when the evidence is insufficient to prove deliberation and premeditation.

While [Petitioner's] definition complies with CALJIC No. 8.30,[14] it is inapplicable to this case. As noted above, one of the theories of first degree murder that [Petitioner] was charged with did not require deliberation and premeditation. Instead, that theory only required the discharge of a firearm from a motor vehicle with intent to kill. Accordingly, defining murder in the absence of deliberation and premeditation would be contradictory and needlessly confusing to the jury. Further, section 189 explicitly defines first degree murder and states that "all other kinds of murders are of the second degree."

Therefore, because the trial court's instructions to the jury accurately addressed the distinction between first and second degree murder, [Petitioner] is not entitled to relief on this issue.

*Rodriguez*, 2014 WL 6491980, at 6-7.

## D. **Denial of Petitioner's Claim of Jury Instruction Err Was Not Objectively Unreasonable.**

The jury instruction given to the jury in this case followed the standard jury instruction and directed the jury as to the appropriate definitions of first degree murder applicable in this case. The trial court did not read the full last sentence of the standard jury instruction; however, after receiving the note from the jury, the court defined second degree murder pursuant to the California Penal Code. Specifically, the California Penal Code states:

[a]ll murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of *willful, deliberate, and premeditated killing*, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, . . ., *or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside the vehicle with the intent to inflict death, is murder of the first degree. All other kinds of murders are of the second degree.*

Cal. Penal Code § 189 (emphasis added).

---

[14] California Jury Instruction 8.30 – Unpremeditated Murder of the Second Degree:

Murder of the second degree is [also] the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation.

The trial court, therefore, correctly instructed the jury that "murder which is not of the first degree is murder of the second degree." (Lodged Doc. 3 at 827.) Because Petitioner cannot show that there was an error in the jury instruction, Petitioner cannot establish that the instruction "by itself so infected the entire trial that the resulting conviction violated" his constitutional rights. *Estelle*, 502 U.S. at 72. Consequently, the Court recommends dismissing Petitioner's jury instruction claim.

**V.    The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claim.**

In his third ground for habeas relief, Petitioner argues that trial counsel provided ineffective assistance by failing to object to the court's definition of second degree murder and failing to properly clarify and define the offense of second degree murder. (Doc. 1 at 25.) Respondent counters that any objection to the definition of second degree murder given to the jury would have been fruitless, as the definition was correct, and counsel need not make fruitless arguments. (Doc. 15 at 16.)

**A.    Standard of Review for Ineffective Assistance of Counsel Claims**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland*

19

test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) he suffered prejudice as a result of the deficient representation. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

**B. State Court of Appeal Opinion**

The Court of Appeal described Petitioner's complaint:

> [Petitioner] asserts that his trial counsel was ineffective for failing to object to the trial court's jury instructions regarding second degree murder. . . . [H]owever, those instructions were an accurate and sufficient statement of the law, and any objection by [Petitioner's] trial counsel would have been fruitless. Therefore, because "[c]ounsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile" (*People v. Price*, (1991) 1 Cal. 4th 324, 387), we find that [Petitioner] was not denied effective assistance of counsel at trial.

*Rodriguez*, 2014 WL 6491980, at 7.

**C. Denial of Petitioner's Ineffective Assistance of Counsel Claim Was Not Objectively Unreasonable.**

Petitioner maintains that trial counsel was ineffective for failing to object the definition of second degree murder given to jury. However, the instruction was an accurate statement of law; therefore, an objection would have been meritless. "Failure to raise a meritless argument does not constitute ineffective assistance of counsel." *Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). Because Petitioner's claim is meritless, the Court recommends denying Petitioner's ineffective assistance of trial counsel claim.

## VI.    The Court Recommends Declining to Hold an Evidentiary Hearing.

Petitioner requests the Court hold an evidentiary hearing.  In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176.  Here, all of Petitioner's claims can be resolved by reference to the state court record.  Accordingly, the Court recommends denying Petitioner's request for an evidentiary hearing.

## VII.    Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B)  the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court should decline to issue a certificate of appealability.

## VIII.   Recommendations and Conclusions

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C ☐ 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned ☐Objections to Magistrate Judge's Findings and Recommendations. Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District

//

//

Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **January 24, 2018**                          /s/ *Sheila K. Oberto*
                                                     UNITED STATES MAGISTRATE JUDGE